### APPEAL OF N. SHURE COMPANY.

Docket No. 3655. Decided September 29, 1926.

Under the terms of the sales contract in this appeal, providing for deferred payments with interest, *held*, that the compensation paid for deferment of principal was interest and not a part of original consideration for the stock purchased.

*Joseph W. Cox, Esq.*, for the petitioner.
*Robert A. Littleton, Esq.*, for the Commissioner.

This appeal is from the determination of a deficiency of $1,013.06 in income and profits taxes for the years 1920 and 1921. There is no controversy in regard to the facts.

### FINDINGS OF FACT.

In 1920 the petitioner paid $4,602.06, and in 1921 it paid $5,733.02, as it claimed, as interest on indebtedness evidenced by the contract hereinafter copied, and which it claimed as a deduction as interest from gross income. The Commissioner contends that under the terms and conditions of said contract said payments were not interest payments, but a part of the purchase price of the stock purchased by the petitioner and hence were capital investments and not deductible.

The contract is as follows:

Chicago, Illinois,<br>
May First, A. D., 1920.

N. Shure Company,
  Chicago, Illinois.
Gentlemen:

I am the owner and holder of two hundred shares of the capital stock of your company and for the purpose of enabling you to acquire said two hundred shares of the capital stock of your company, I hereby make you the following proposition:

(1) For and in consideration of the covenants and agreements hereinafter described to be performed by you, I agree to sell to you the number of shares on the dates and at the prices as follows:

  52 shares of the Capital Stock on the First day of July, 1921, at $647.25 per share.
  37 shares of the Capital Stock on the First day of July, 1922, at $647.25 per share.
  37 shares of the Capital Stock on the First day of July, 1923, at $647.25 per share.
  37 shares of the Capital Stock on the First day of July, 1924, at $647.25 per share.
  37 shares of the Capital Stock on the First day of July, 1925, at $647.25 per share.

You hereby agreeing to purchase and pay for the same upon the dates, at the prices and the amounts as hereinabove set forth.

(2) I hereby agree that upon your acceptance of this contract I will deposit said two hundred shares of the Capital Stock of your company, duly endorsed, with Foreman Bros., Banking Company of Chicago, Illinois, as Trustee, to be held by the said Foreman Bros. Banking Company for the benefit and purpose of this agreement and subject to all of the terms hereof.

(3) All payments to be made to you for the stock shall be paid to me, or to the trustee, and the Trustee upon such payment to me, when proper and duly signed receipt is presented, or upon payment to it, should then deliver the number of shares of stock herein provided and paid for to you or to your order.

(4) I agree that you shall have the right at your option to take up and pay the purchase price of all of said stock, or any unpaid shares in blocks of thirty-seven shares at any time prior to the dates hereinabove stipulated upon first giving ninety days written notice to me and to the trustee and upon the expiration of such notice and the payment in full of the amounts payable as provided in this contract, the trustee shall deliver to you, or to your order, such of the remaining shares of stock of said Company as paid for under such notice.

(5) In consideration of my agreement to sell and your agreement to purchase the stock as in this contract set forth, you agree to pay, semi-annually, an amount equal to six per cent (6%) per annum from date hereof until all shares are taken up under this contract, on the value of the number of shares not taken up and paid for, computing the value of said shares at $647.25 per share.

(6) From and after the date of this contract, you having complied with all of the terms hereof, all rights and increments to all of said stock or any undelivered portion thereof shall insure [sic] to you, PROVIDED, HOWEVER, that in the event of a stock dividend being declared by your company, there shall be delivered to the Trustee an amount of shares of such stock dividend, or dividends, as declared as is proportionate to the number of shares still held by the Trustee and the total number of shares of capital stock on the date of this contract. Whenever the Trustee delivers to you any of the shares of the capital stock of your Company deposited with the Trustee, the sale whereof is provided in this contract, the trustee shall deliver to you the proportionate amount of stock dividend shares, if issued and delivered to the Trustee. In no case shall you be compelled to pay to the Trustee an amount that is in excess of the total amount hereinabove provided for to be paid.

(7) In case you shall default in the performance of the covenants and conditions of this agreement or to make payments as and when they become due and payable, I will have the right, at my option, upon giving you ninety days written notice to declare this contract cancelled and at an end and the said Trustee upon demand in writing shall turn over and deliver to me, or my order, all of the stock in the [sic] possession under the terms of this contract; but such cancellation of this contract shall apply only to the stock not then paid for and delivered to you; or, I am, at my option, without notice elected to enforce the terms of this contract.

(8) The remedies hereinabove provided to me are separate, distinct and additional remedies one to the other, and the election by me of one remedy shall not be a bar to any other remedy and shall not prejudice my rights to take any other action at law or equity for the protection and enforcement of my rights under this contract.

(9) The Trustee shall have no personal obligation or liability other than to carry out the terms of this contract fully and in good faith, and shall be bound only to the exercise of due care on all questions and matters arising thereunder.

(10) Any notice required to be given under the terms of this contract shall be given by registered mail to the last known address of such party.

(11) This agreement shall be for the benefit of ourselves, our heirs, executors, administrators, successors and assigns, and all of the rights and obligations herein prescribed for either you or me shall inure to be binding upon our heirs, executors, administrators, successors and assigns.

(Signed)      HERMAN SHURE.

The foregoing proposition was formally accepted by corporate action of the petitioner.

LOVE: The Commissioner contends that the provisions of the contract in question for the payment of 6 per cent per annum on the unpaid balance due on the stock was in effect a part of the purchase price or a guaranteed dividend and not interest. Clearly, the seller endorsed the stock and passed it out of his possession and control to the trustee. He retained only the right to the agreed money payments, at stipulated times, and the right to 6 per cent per annum for the unpaid balances. In case of default he had the right of recovery of the unpaid stock or specific performance of the contract. There clearly existed the simple relationship of debtor and creditor in which the total amount of the indebtedness, the time due, and the consideration for the deferred payments were fixed. To hold that the consideration for the unpaid balances constituted guarantee dividends or part of the consideration for the stock itself, in our opinion, would be a forced and unnatural construction of the plain meaning of the contract.

> *Judgment for the petitioner. Order of re-determination will be entered on 15 days' notice, under Rule 50.*